105 So.2d 717

**D. L. SPEAGLE et al.**

v.

**UNITED STATES STEEL CORPORATION**
and Department of Industrial
Relations.

.6 Div. 569.

Supreme Court of Alabama.
June 10, 1958.

PER CURIAM.

The following is in response to your inquiry propounded to this Court under authority of section 88, Title 13, Code.

Your inquiry seeks a construction of section 214, subd. A, Title 26, as amended, pocket part, Code, in respect to a refusal by an employee to cross a picket line during a strike.

We think a few observations are pertinent before answering your questions in that connection. Attention is directed to the absence from section 214, subd. A, supra, of any reference to the act of crossing a picket line during a labor dispute.

It is observed that to disqualify an employee for receiving unemployment benefits on account of a strike, his unemployment must be *"directly due"* to a labor dispute still in active progress in the establishment in which he is or was last employed. Section 214, subd. A, Title 26, pocket part, Code. Emphasis is placed upon the words *"directly due"*. This is referred to and applied in Department of Industrial Relations v. Drummond, 30 Ala.App. 78, 1 So.2d 395, 397, certiorari denied 241 Ala. 142, 1 So.2d 402, as follows:

> "It thus appears that, because of the apprehension of the employer company that to allow some employees to work when others (the C.I.O. affiliates) were on strike would result in violence, the appellee was locked out of work by the published notices and close down of the Wylam Mine. This, therefore, was the *direct* cause of appellee's unemployment and not the 'labor dispute' in which the C.I.O. affiliates were involved."

> "* * * the Legislature never intended that one, who has purchased his protection against involuntary unemployment, should be denied those benefits because of a 'labor dispute' in which he was in no way involved and the causes of which unemployment he, his agents or organization were powerless to avert."

The Court of Appeals held in the Drummond case, supra, that section 214, subd. A, supra, does not serve to disqualify employees for unemployment benefits when their unemployment results from a shut down of the operations in which such employee has been engaged, and when the shut down of those operations is the result of an apprehension by the *employer* that there would be violence if there was an attempt to operate during the labor dispute and strike in which the complaining employees did not participate.

The same theory was recognized in Usher v. Department of Industrial Relations, 261 Ala. 509, 75 So.2d 165. See, also, T. R. Miller Mill Co. v. Johns, 261 Ala. 615, 75 So.2d 675, 680.

Attention is called to the following statement in the Johns case, supra: "It thus appears that it (section 214, subd. A) contains all the disabilities (disqualifications?) that the legislature intended to impose because of a labor dispute". · Attention is also directed to a feature of the quotation from the Drummond case, supra, which declares in substance that an employee has purchased the right to unemployment benefits not to be denied him on account of a labor dispute "in which he was in no way involved and the causes of which unemployment he, his agents or organization were powerless to avert."

■ The Drummond, Usher and Johns cases, supra, are clear and distinct to the effect that subsection A of section 214 does not disqualify an employee for such benefits by reason of a labor dispute unless he is directly involved in the dispute. Such unemployment would not be directly due to a labor dispute if his employer closed the shop, in which he was engaged, on account of his fear that violence would result, even though such closing was directly due to the peaceful picketing which in turn was directly due to a labor dispute in which the claimant was not involved.

There are many cases which hold that the refusal to cross a picket line to go to

**6**

work does disqualify an employee for benefits, when such refusal does not result from a well-founded apprehension of personal violence to do so, and his job continues to be open to him, because such is a "participation" in a labor dispute which under the statute disqualifies one for so doing. Baldassaris v. Egan, 135 Conn. 695, 68 A.2d 120; American Brake Shoe Co. v. Annunuzio, 405 Ill. 44, 90 N.E.2d 83; Aitken v. Board of Review, 136 N.J.L. 372, 56 A.2d 587. See, also, 28 A.L.R.2d 333.

Inquiry No. 1.

■ We think that a voluntary refusal by an employee to cross a peaceful picket line set up in a labor dispute by some union, of which claimant is not a member, to work on a job still open to him by his employer, disqualifies an employee, while so doing, for unemployment benefits under section 214, subd. A, Title 26, pocket part, Code.

Inquiry No. 2.

We think inquiry No. 2 is governed by the same principles stated above; and, therefore, the answer to inquiry No. 2 is *No*.

Inquiry No. 3.

■ Assuming that his refusal to cross the picket line is solely because of his adherence to a tenet of his trade unionism, we answer *Yes*.

Inquiry No. 4.

■ In answer to this question it is our opinion that an employee's statement of his apprehension of violence *to his person if he* were to cross a picket line would not be legal evidence. McGuff v. State, 248 Ala. 259, 27 So.2d 241.

All the Justices concur.