BRADLEY and HOLMES, JJ., concur.

270 So.2d 92

Richard L. HOLMES, as Director of the Department of Industrial Relations of the State of Alabama, and the Central Foundry Co., a corporation

v.

Clarence RICE et al.

6 Div. 59.

Court of Civil Appeals of Alabama.

May 24, 1972.

Rehearing Denied June 28, 1972.

Hubbard & Waldrop, Tuscaloosa, J. Eugene Foster, Montgomery, for appellants.

**222**

Rosen, Wright & Harwood, Tuscaloosa, for appellees.

WRIGHT, Presiding Judge.

This case was previously assigned to another judge and was only recently reassigned to the writer.

Claims for unemployment compensation were filed by 178 employees of Central Foundry Company of Tuscaloosa. After denial of compensation by the Director of the Department of Industrial Relations and the Board of Appeals of the Department, appeals were filed for trial de novo in the Circuit Court of Tuscaloosa County as provided by Title 26, Section 214(A), 1940 Code of Alabama as amended.

By agreement and stipulation, five of the cases were selected as representative of all, and the five cases were consolidated for trial on November 26, 1969. Judgment was entered on March 11, 1970 awarding compensation for 4 weeks beginning March 23, 1969. Central Foundry appeals from the judgment.

All of the 178 claims arose from the same circumstances.—On March 1, 1969 Central Foundry was struck by the International Association of Machinists and Aerospace Workers Local 455. A picket line was established. Claimants are members of International Molders and Allied Workers, Local 311. Their union did not strike. Central Foundry ceased operations on March 1. Claimants filed for unemployment benefits on March 2. On March 21 Central Foundry notified claimants that work was available and to return to work on March 24. Claimants did not return to work as notified. Thus their claims were denied for the weeks when work was available and they did not work.

The evidence showed that on March 14, 1969 there was mass picketing at the entrance to Central Foundry resulting in the forcible stopping of a locomotive and the arrest of seven pickets for trespassing. There were present various tools which could be used as weapons.

As a result of the episode of March 14, an injunction was issued by the Circuit Court on March 19. The injunction required peaceful picketing and limited the number of pickets at any entrance to four.

The contention of the claimants was that they wanted and were willing to work, but were prevented from working due to ap-

prehension of violence if they attempted to or in fact did cross the picket line and proceed to work.

In support of their claim of apprehension of violence, evidence was presented showing they were employees at the same plant during a previous strike in 1962. At that time each of them crossed the picket lines and worked. There were threats made and opprobrious words passed to them by the strikers. Some of them had their automobiles damaged while at work. Their tires were cut and sugar placed in the gasoline tanks. Shots were fired at one of their homes.

After the strike began in 1969, there was evidence that one of the claimants received an anonymous telephone call at night warning him not to go to work. After the injunction was issued two trucks hauling pipe from the struck plant were attacked by strikers and damaged by having their tires slashed and sugar put in their gasoline tank. One truck was damaged in Tuscaloosa and another in Centreville, 38 miles from Tuscaloosa. Claimants were all black and their place of work was in the shipping department of Central Foundry. The purpose of their being directed to return to work was to ship out pipe in inventory prior to the strike.

The errors charged by appellant are in greater part directed to the judgment of the trial court. The errors charged are conjunctively that the judgment is not supported by the evidence and is contrary to law. Thus we shall consider assignments 1 through 10 and assignment 16 as one.

The order and judgment of the trial court is extensive. Briefly, the finding of fact of the trial court is that the Foundry was struck by the Machinist Local on March 1, 1969. The claimants were not members of the Machinists and were not on strike. The Foundry shut down from March 1, 1969 until further notice. Claimants filed for and were paid compensation until directed by letter to return to work on March 24 or March 26, depending upon which shift they worked. Claimants did not respond to notice to return and made no attempt to cross the picket lines. They did not return to work until the strike ended and pickets were withdrawn. The court related the arrests of strikers on March 14 and the issuing of the injunction on March 19. It then related findings of acts of violence against claimants during the strike of 1962 after they had crossed the picket lines. There was further stated the acts involving the two trucks which has been previously mentioned herein and which events occurred either on March 22 or March 24, 1969. Claimants stated they had read newspaper accounts of the truck incidents and that they had a fear of personal violence if they crossed the picket lines.

From the facts as found by the court it determined that the claimants were justified in their fear of crossing the picket line and were "thereby prevented from engaging in a customary employment."

It was therefore ordered and adjudged each was entitled to receive unemployment compensation benefits from March 23 through April 19, 1969 in the total sum of $176.00.

Title 26, Section 214(A), Code of Alabama, disqualifies employees from benefits as follows:

"For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed . . . ."

Judicial interpretation of the above provision has established an exception to its literal effect. Such exception may be termed the "well-founded fear of personal violence." Ex parte McCleney, 286 Ala. 288, 239 So.2d 311.

Ex parte McCleney, supra, was decided by the Supreme Court of Alabama September 3, 1970 on certiorari from the former Court of Appeals of Alabama. It declared as substantive law in this state the "vio-

lence exception" to the provisions of the statute.

Such exception had existed previously as dictum in the case of Speagle v. United States Steel Corporation, 268 Ala. 3, 105 So.2d 717; 28 A.L.R.2d 333.

*McCleney* contains a documented history and discussion of the evolution of the "violence exception" from dicta into declared law. We will not be repetitious here.

Having declared the end of the evolution, *McCleney* established ground rules for coming within the violence exception as follows:

"Unless the exception is narrowly restricted, its recognition, without more specificity, would tend to encourage violence on the picket line because a member of a non-striking union could say that violence on the picket line caused him to refuse to cross it and begin to draw compensation. In a large multiunion plant, this procedure could go on and on and the insurance funds would be seriously depleted and the rates would rise sharply.

"To qualify for unemployment compensation, the burden of proof is on the claimant to show (1) that he was willing to cross a peaceful picket line, Speagle v. United States Steel Corp., 268 Ala. 3, 105 So.2d 717; Mancini v. Administrator, 24 Conn.Sup. 461, 194 A.2d 540; (2) that he made a reasonable attempt to cross the picket line in question, Achenbach v. Review Board of Ind. Employment Sec. Div., 242 Ind. 655, 179 N. E.2d 873; Baldassaris v. Egan, 135 Conn. 695, 68 A.2d 120; Franke v. Unemployment Comp. Bd. of Review, 166 Pa.Super. 251, 70 A.2d 461; (3) that claimant's *sole* reason for failing to cross the picket line was a well-founded and reasonable apprehension of violence to his person. See Lanyon v. Administrator, 139 Conn. 20, 89 A.2d 558; Sangamo Electric Co. v. Donnelly, 26 Ill.2d 348, 186 N.E.2d

230; Marczi v. Board of Review, 63 N. J.Super. 75, 163 A.2d 723. We use the word 'sole' as contrasted with refusing to cross a picket line because of union beliefs, sympathy with other strikers, pangs of conscience, or adherence to union principles. This court has already said that a claimant's 'refusal to cross the picket line is solely because of his adherence to a tenet of his trade unionism' disqualifies him for benefits under Tit. 26, § 214(A), Code 1940; *Speagle*, 268 Ala. 3, 105 So.2d 717. And we have here approved the 'violence exception.' But a combination of the two in any percentage would impair and practically nullify both rules. This explains why the refusal to cross the picket line must be solely one or solely the other, without any combination of each."

In view of the trial court's affirmative finding that claimants made no attempt to cross the picket line, we are presented with the question of whether the rules set out in *McCleney* are conjunctive and compliance with each must be shown in order to come within the violence exception.

Our analysis of *McCleney* and the theory which underlies it does not convince us that the stated requirements of proof are conjunctive. We believe that if it is shown by convincing proof that the sole reason for failure of a claimant to return to work was because of a real, genuine and well-founded fear of personal violence, such is sufficient. Certain it is that the presence of such well-founded fear or apprehension removes the necessity of making an attempt to cross the picket line. If one is possessed by a well-founded fear of personal violence if he tries to work in a strike-bound plant, it is not wise to attempt to expiate such fear by daring the source thereof.

If a claimant's *sole* reason for not working is reasonable fear of personal violence if he crosses a picket line, it must logically follow that he is willing and desirous of working were it not for the *sole* reason.

*Sole* means one and only one, acting independently and exclusively and without assistance of any other.

We have judicial knowledge growing out of experience and general knowledge that reasonable fear of personal violence may arise for more than what occurs or may occur on a picket line. There may in fact be a peaceful picket line supported by violence or threat of violence in other areas. A peaceful picket line may be the result of violence or apprehension of violence occurring elsewhere.

*Speagle*, supra, declared that one was disqualified from receiving compensation if refusal to cross a picket line by a non-striking worker was *solely* because of his adherence to a tenet of trade unionism.

Dept. of Industrial Relations v. Drummond, 30 Ala.App. 78, 1 So.2d 395, cert. den. 241 Ala. 142, 1 So.2d 402 pronounced the rule that one was not disqualified under Title 26, Section 214(A), Code, if the plant were shut down by the employer because the employer had an apprehension that there would be violence if operations were attempted during a strike. This rule was followed in Usher v. Dept. of Industrial Relations, 261 Ala. 509, 75 So.2d 165 and T. R. Miller Mill Co. v. Johns, 261 Ala. 615, 75 So.2d 675. It was reiterated in *Speagle*. In these cases the court interpolated that claimant's unemployment was not *directly due* to a labor dispute in the establishment in which he was employed as provided by Section 214(A), but rather that the direct cause of unemployment was the shutdown by the employer because of its apprehension of violence. It appears that such rule, though proper in its result, allows an employer, though violence is evident or reasonably to be apprehended, to leave open his operation and place the burden upon the non-striking worker to face violence or the possibility thereof and return to work or be disqualified from compensation.

In the instant case the employer first shut down its operation, it may be contend-

ed, because of apprehension of violence. Violence or threat of it occurred. Strikers were arrested. An injunction was sought and issued. At the discretion of the employer, non-striking workers were directed to cross the picket line and work or be disqualified for compensation which they were then drawing because of the apprehension of the employer under the rule of *Drummond*. Thus the burden of apprehension was shifted from the employer to the non-striking employee.

Did the issuing of the injunction remove apprehension of violence? In *McCleney* it was said: "Theoretically, it should. We know that it does not always do so."

*McCleney* refers to the statement in *Speagle* and lays its use of the term *sole* alongside. In doing so, the following is stated: "But a combination of the two in any percentage would impair and practically nullify both rules. This explains why the refusal to cross the picket line must be solely one or solely the other, without any combination of each."

Though recognizing with all respect the final authority of the Supreme Court as concerns this court's actions, we must state this statement does not appear correct. The tendency of the rule from *Speagle* is that one may not be disqualified from compensation if it appears that his refusal to cross the picket line was not solely because of his adherence to trade unionism. For aught that appears he may be qualified if some other reason, such as fear of violence, entered into his refusal. On the other hand, according to the statement of *McCleney*, he is disqualified if trade unionism, in any percentile, affected his refusal, though there is convincing proof of a well-founded fear of violence.

Thus in the first instance, he is not disqualified unless his refusal is based solely on trade unionism. In the second, he is not qualified unless his refusal is solely without trade unionism. These rules appear inapposite.

■ In further support of our view that the rules of proof to establish the violence exception are not conjunctive, but that proof of rule (3) is sufficient, we quote from *McCleney as follows*: " . . . but that the burden is still on the claimant to show that he was willing to cross the picket line, that he attempted to *or* that the sole reason for his failure to return to work was because of a real and genuine fear of personal violence." We therefore hold that proof that the sole reason for failure to return to work was because of a real and genuine fear of personal violence is sufficient to bring a non-striking worker within the violence exception. Proof of willingness and/or an attempt to cross the picket line may be of value in showing a fear of personal violence as the sole reason for refusal to return to work.

The trial court's finding of a failure to attempt to cross the picket line in the instant case does not prohibit a qualification for compensation under the violence exception.

We must now look to the evidence presented by claimants to determine if it substantially supports the court's judgment of qualification because of a reasonable fear of personal violence. In order to do this, we must first consider the charges as to the admission of illegal evidence.

■ It is contended that the admission of testimony of one of the claimants that he had received an anonymous phone call implying violence if he crossed the picket line was reversible error because in violation of the hearsay rule.

We think such call was admissible. It must be considered that in this case the matter to be proved is the state of mind of the claimants at the time they refused to cross the picket line.

■ Dean Wigmore terms it "consciousness, i. e. presence in the mind of an impression as to a given fact." Wigmore on Evidence, 3rd, Sec. 244. Any relevant occurrence known to the claimant which may reasonably be calculated to create or contribute to a given state of mind in one so situated would be admissible in evidence. The truth of the statement by an anonymous caller in such instance is not the fact in issue. The matter of whether such call was made and the manner in which it was made is open to impeachment. Whether the call is relevant is a matter of substantive law.

*Wigmore* states the general principle involved as follows: "There are, in a broad analysis, four kinds of circumstances (events or things) which may point forward to the probability that a given person received a given mental impression (i. e. obtained knowledge, formed a belief, or was made conscious) :

(1) The direct exposure of the fact to his sense of sight, hearing, or the like;

(2) The express making of a communication to him;

(3) The reputation in the community on the subject, as leading probably to an express communication;

(4) The intrinsic quality of the occurrence, as leading either to actual perception by his senses, or to express communication."

A good analogy to the matter at hand is the state of mind of an accused murderer who pleads self-defense. He may establish presence of a reasonable belief of the necessity to defend himself from death or serious bodily harm at the hands of the deceased by producing proof of communicated threats, reputation for violence in the community, previous acts of violence by the deceased against himself or even others and present overt acts.

The analogy of the required presence of similar states of mind is clear. The method of proof of matters and events reasonably deemed relevant to produce in the mind of one a well-founded belief in the necessity to act in self defense should be equally open to one required to prove a

well-founded belief that he should act in self preservation by refusing to cross a picket line in a strike-bound plant.

After testimony by police officers concerning the incident with the truck in Centreville, there was allowed in evidence the police report thereon prepared by one of the witnesses. Appellant contends the admission of the report was reversible error.

Appellant bases his argument on the provisions of Title 36, Section 126, Code of Alabama 1940. This statute refers to automobile accident investigation reports and declares them inadmissible in any trial. It is clear the statute is in line with the hearsay rule because such ordinary report is at least in part based upon matters not seen and observed by the reporting officer.

An examination of the transcript reveals that the matters contained in the report had been already substantially stated by the reporting officer and admitted into evidence. There is no error charged as to the testimony of the officer on appeal. Without deciding if the report was admissible, we hold that if it was not and its admission was error, under state of the case it was error without injury. (It appears claimants in some respects over tried their case. The report had no probative value on the issue that we can see.)

Appellant next charges error in the admission of newspaper articles relating to matters surrounding the strike, the arrests of pickets, and of the damaging of the trucks. It is contended such articles were admitted without limitation as to their purpose and were therefore in violation of the hearsay rule. Persons v. Summers, 274 Ala. 673, 151 So.2d 210. Appellant's position is technically correct; however the subject of the newspaper articles came into evidence by other means and thus was merely cumulative. We do not consider their admission to be prejudicial to reversal. Rule 45, Supreme Court Rules. The articles were admissible as relevant under the theory herein previously discussed, not for the truth of the matter contained

therein, but to show communication of information as would naturally excite apprehension. Such admission must be prefaced by proof of communication directly or as a basis for community reputation of which there is knowledge by the claimant. Claimants should have sought admission on such limited grounds.

Having eliminated errors charged in the admission of the evidence, we turn now to whether the evidence supports the judgment.

We have carefully reviewed the evidence and the court's finding of fact. Our review on appeal is accompanied by a presumption of correctness of the judgment of the trial court, the same carrying the force of a jury verdict. Such presumption is not overcome unless the judgment is without support of substantial evidence and is clearly wrong or manifestly unjust. Cudd v. City of Homewood, 284 Ala. 268, 224 So.2d 625; Dept. of Industrial Relations v. Rich, 42 Ala.App. 80, 152 So.2d 692. We consider the judgment in this case substantially supported by the evidence and the law of Ex parte McCleney, supra, as we have herein discussed. The judgment is therefore affirmed.

Affirmed.

BRADLEY, J., concurs.

HOLMES, J., not sitting.

### ON REHEARING

WRIGHT, Presiding Judge.

Appellant, on application for rehearing, argues that we have ruled contrary to Ex parte McCleney, supra, in our original opinion. We do not agree that we have so ruled.

We explicitly stated in our opinion that we were bound by the decision of Ex parte McCleney, supra. We attempted to point out that the burden or methods of proving the violence exception to Tit. 26,

**228**

§ 214(A), listed in *McCleney* were not intended to be required conjunctively. Appellant, on rehearing, states that we held them to be alternative. We did not so hold. We merely stated that if it were shown that a claimant's sole reason for failing to cross a picket line was a well founded and reasonable apprehension of violence to his person it would be totally superfluous and unnecessary to prove that he was (1) willing to cross a peaceful picket line and, (2) that he made a reasonable attempt to cross such picket line. We further indicated that proof of the latter two matters could only be relevant in an effort or means tending to prove the first. If it is shown by the evidence that a claimant's refusal to work is solely because of a well founded and reasonable apprehension of violence to his person, the exception to the words of the statute is proved. Nothing else need be shown. We believe this to be the holding in *McCleney*.

Appellant further contends we have departed from *McCleney* in allowing admission of evidence as to violence occurring prior to the strike, particularly as to violence occurring in a similar strike in 1962, and prior to the issuance of the injunction. Quoting from *McCleney* as follows:

"Evidence of violence which occurred prior to the issuance of the injunction alone is not sufficient to support a claim of fear of violence as the basis for not crossing a picket line after the issuance of the injunction." (286 Ala. at page 294, 239 So.2d at page 317)

Appellant contends that evidence of violence prior to issuance of an injunction is not admissible. Close reading discloses that appellant's contention is not supported by the quotation. It states that such evidence *alone* is insufficient to prove fear of personal violence.

Thus we are brought to appellant's contention that evidence of violence occurring after a failure to cross the picket line or after issuance of an injunction is inadmissible under the holding of *McCleney*. Ap-

pellant again quotes from *McCleney* as follows:

"And the fact that violence erupted *after* these claimants had refused to cross the picket line cannot bolster their claim for benefits. This was settled in Badgett v. Department of Industrial Relations, 30 Ala.App. 457, 10 So.2d 872, . . . ." (286 Ala. at pages 292 and 293, 239 So.2d at page 316)

Our view of this statement from *McCleney*, upon consideration of the case as a whole, is that it is limited to the facts of that particular case. We have carefully read Badgett v. Department of Industrial Relations, supra, referred to in the above quotation and we find nothing in that case contrary to our view. In fact, we are unable to find anything in *Badgett* relating to the issue under consideration here.

The court, in *McCleney*, subsequent to the statements quoted by appellant, said the following:

"We do not hold that evidence of violence is inadmissible after the issuance of an injunction, but that the burden is still on the claimant to show that he was willing to cross the picket line, that he attempted to or that the sole reason for his failure to return to work was because of a real and genuine fear of personal violence." (286 Ala. at page 294, 239 So.2d at page 317)

It certainly is true that violence occurring after a refusal to cross a picket line may not be substantive evidence of the reason for an initial refusal, but there was a continuing refusal involved here. The claim for benefits extend over several weeks. The refusal to cross picket lines after March 24, the date of the incidents with the trucks, surely could be supported by evidence of such incidents. We also think evidence of such incidents, though occurring a few hours after some of the claimants were directed to return to work, was admissible as a supporting basis of the existence of a well founded and reasonable

fear of personal violence as of the time of refusal.

Opinion extended and application for rehearing overruled.

BRADLEY, J., concurs.