WILLIAM L. SCHOOLEY, *ET AL.*, (TOTALING 524), APPEL-
LANTS, v. BOARD OF REVIEW, DIVISION OF EMPLOY-
MENT SECURITY, NEW JERSEY DEPARTMENT OF
LABOR AND INDUSTRY, AND WALTER KIDDE & CO.,
INC., RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1957—Decided January 15, 1957.

382

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Abraham L. Friedman* argued the cause for appellants (*Messrs. Rothbard, Harris & Oxfeld,* attorneys; *Mr. Samuel L. Rothbard,* of counsel).

*Mr. Clarence F. McGovern* argued the cause for Board of Review, Division of Employment Security.

*Mr. William T. Wachenfeld* argued the cause for respondent Walter Kidde & Co., Inc. (*Messrs. Lum, Fairlie & Foster,* attorneys; *Mr. Vincent P. Biunno,* on the brief).

The opinion of the court was delivered by

JAYNE, J. A. D.   The present appeal is prosecuted on behalf of 524 claimants from a decision rendered on June 19, 1956 by the Board of Review, Division of Employment Security, denying them unemployment compensation benefits for the period from December 2, 1955 through December 29, 1955.   *N. J. S. A.* 43:21.   The Board of Review, after a deliberate consideration of the testimony adduced at a complete hearing, concluded that the claimants were ineligible to receive compensation benefits for the entire duration of the work stoppage for their participation in a labor dispute because of the disqualifying terms and provisions of *N. J. S. A.* 43:21–5(*d*).

An acquaintance with the transcription of the evidence and of the stipulated facts instantly reveals that the decision of the board in this proceeding manifestly depended upon and resulted from a determination of the credibility to be ascribed to the testimony of the several witnesses.

The employer, Walter Kidde & Co., Inc., engages at its main factory in Belleville, New Jersey, about 1,600 employees. About 75 to 80 of these are office workers who are members

of and represented by Local Union 436. Approximately 770 are hourly workers, all of whom except about 50 are members of and represented by Local 146. Both unions are in the U. A. W.–C. I. O. family. The remainder of the employees are not affiliated with either local union.

Local 146 had an existing collective bargaining agreement with the employer. The bargaining agreement between the employer and the members of Local 436 expired on November 30, 1955 and on December 2, 1955 the members of that union declared a strike. Mass picketing was immediately organized, and repeated instances of damage to the property of those who endeavored to enter the plant ensued until the employer obtained injunctive relief from the Chancery Division on December 12, 1955. The strike thereafter continued peacefully until the settlement of the strike on December 29, 1955.

Admittedly there was "a labor dispute at the factory" which "caused the stoppage of work." Significantly, Locals 146 and 436 are members of the same International. All of the members, including the 524 claimants, of Local 146 ceased work in consequence of the strike declared by Local 436. Assuredly there was a rational basis in the evidence to sustain the conviction that the claimants ceased work in order to intensify the strike of its little companion—an exemplification of union solidarity.

The claimants declined to cross the picket line, even after the injunctive order of the court had reduced the number of pickets and order had been restored at the entrance to the factory. Many are the decisions holding that voluntary refusal to cross a picket line constitutes a contributing participation in the labor dispute and a consequential disqualification for unemployment compensation benefits. Examples, *Aitken v. Board of Review of Unemployment Compensation Commission,* 136 *N. J. L.* 372 (*Sup. Ct.* 1948); *Morris v. Unemployment Compensation Board of Review,* 169 *Pa. Super.* 564, 83 *A. 2d* 394 (*Super. Ct.* 1951); *Lanyon v. Administrator, Unemployment C. Act,* 139 *Conn.* 20, 89 *A. 2d* 558 (*Sup. Ct. Err.* 1952); *Lloyd E. Mitchell,*

Inc. v. Maryland Employ. Sec. Bd., 121 A. 2d 198 (Md. Ct. App. 1956); Cottini v. Cummins, 8 Ill. 2d 150, 133 N. E. 2d 263 (Sup. Ct. 1956); 28 A. L. R. 2d 287, 333.

The basic principle is that voluntary idleness is not involuntary unemployment. It is also a widely accepted rule that failure to pass a picket line will not be regarded as a voluntary inaction where it is shown to have been due to a reasonable and justifiable fear of harm to the claimant in the existing conditions. In such a situation the failure is deemed to be involuntary. Steamship Trade Ass'n of Baltimore v. Davis, 190 Md. 215, 221, 57 A. 2d 818 (Ct. App. 1948). Vide, Shell Oil Company v. Cummins, 7 Ill. 2d 329, 131 N. E. 2d 64 (Sup. Ct. 1955).

In the instant controversy there was no "lock out," and there was a manifest failure to pass the picket boundary. To escape the statutory disqualification, the burden rested upon the claimants to establish that their failure to pursue their employment was essentially attributable to a real and genuine fear to do so rather than to a desire to abide by the traditional principles and policies of union solidarity.

The Board of Review rather sensibly resolved that the robust Local of 720 members was not intimidated by its much less sturdy neighbor of 75 members, about half of whom were women. There was an inability to supply the name of any individual who threatened a member of Local 146 with violence. Moreover, it was acknowledged that all exhibitions of violence terminated upon the issuance of the injunction on December 12, 1955, whereupon some members of the striking union resumed work, but none of the claimants and their associate members of Local 146 chose to do so until the conclusion of the strike. Actions ofttimes speak more loudly than the verbal evidence. Of some additional pertinency was the circumstance that both locals occupied the same headquarters.

From all of the information imparted by the evidence, the inference appears to be entirely logical that the pressure potency of the strike would have been inconsiderable in the reasonable anticipations of the locals, without the aid of

the members of Local 146. Indeed, the vice-president of the employer testified that on December 8, during the early stage of the strike, he asked one Julius Caplan, a member of Local 146 stationed on the picket line: "Why in the world are you fellows staying out here when you have no interest in this argument?" The answer was, "We have got to support this union. Fundamentally this is an argument about seniority and we are interested in seniority."

The factual ascertainment of the motive, intent, purpose, and causation of the claimants' cessation of work was appropriately the *quasi*-judicial function of the administrative Board of Review. See, *Curtis v. Liberty Restaurant,* 4 *N. J. Super.* 13 (*App. Div.* 1949), affirmed 3 *N. J.* 1 (1949).

In the present proceeding the competent and relevant evidence and the derivative inferences were sufficiently substantial to support the factual findings and resultant decision of the board. *Vide, In re Larsen,* 17 *N. J. Super.* 564 (*App. Div.* 1952); *Hornauer v. Division of Alcoholic Beverage Control,* 40 *N. J. Super.* 501 (*App. Div.* 1956).

Affirmed.