Petition of Robert J. McCleney and Lester Leon Whitsett for certiorari to the Court of Appeals in the case of W. S. Dickey Clay Manufacturing Co. v. Robert J. McCleney and Lester Leon Whitsett; and petition for certiorari of W. S. Dickey Clay Manufacturing Co. to the Court of Appeals in the same cases,239 So.2d 304. Amici curiae brief was filed on behalf of the Alabama State Chamber of Commerce and Associated Industries of Alabama, also supporting certiorari.
On certiorari, the Supreme Court will not enter into a redetermination of facts as found by the Court of Appeals. State Dept. of Industrial Relations v. Ford, 278 Ala. 352,178 So.2d 190 (1965).
The facts as reported by the then Court of Appeals were substantially as follows: On February 8, 1965, Local No. 827 of the United Brick and Clayworkers of America, consisting of 17 employees of Dickey Company, commenced a strike at about 5:30 A. M. Dickey employed about 200 men in the manufacture of clay pipe, most of whom are represented by the United Steelworkers of America. The two claimants for unemployment compensation were members of the steelworkers union which did not go out on strike. The plant superintendent stated that the plant would not operate during a strike. The first acts of violence occurred on February 17, 1965. Then on February 18, 1965, the superintendent mailed a letter to all non-striking employees informing them that they were to report to work on February 22, 1965. The opinion of the Court of Appeals stated that "During this period some of the non-striking employees had returned to work and it was against them that the initial acts of violence occurred," apparently referring to a period between February 8 and February *Page 290 
18, 1965. The superintendent, McCroskey, mailed out a second letter to non-striking employees which stated that failure to report to work by March 1, 1965 would result in termination of their employment. The claimants' employment was then terminated as they failed to report for work.
According to the opinion, McCleney testified that he reported for work on February 8, where he found about 150 people milling around; that there were threats not to go into the plant, and that he never saw any violence. McCleney had testified that he never thought it was proper to cross any man's picket line. Whitsett had also found the same situation on February 8 and he, too, did not go into the plant. Both Whitsett and McCleney registered for unemployment compensation on February 8, 1965, under Tit. 26, § 214(A), Code 1940. They never returned to work. Eighty of the non-striking employees reported for work on February 17, 1965, and 117 on February 18, 1965. The strike was finally settled on February 4, 1966.
The opinion of the Court of Appeals set out more facts than we have stated in this opinion, but we deem our statement to be sufficient to show that this case deals with the requirements for eligibility for unemployment compensation under Tit. 26, § 214(A), when the claimants did not cross a picket line because of "an intervening cause which was his fear of consequences if he went to work and thus ignored the picket line," and our holding is confined to a cons deration of the "violence exception" in picket-line cases.
The issue presented in this case is whether the claimants were disqualified from receiving unemployment compensation by virtue of Tit. 26, § 214(A), which provides in pertinent part:
 "§ 214. Disqualification for benefits. — An individual shall be disqualified for total or partial unemployment:
 "A. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, * * *."
The trial court found that the petitioners were entitled to the benefits. The Court of Appeals conditionally affirmed and remanded with instructions to hold hearings into the period of time elapsing from the end of the violence for the duration of all claims. The claimants argued that there is a "violence exception" to Tit. 26, § 214(A). This exception to the statute is a judicial interpretation which provides that if a claimant for unemployment compensation can show a well-founded fear of personal violence, his refusal to cross a picket line would not entail his disqualification. This exception was first mentioned in Speagle v. United States Steel Corporation, 268 Ala. 3,105 So.2d 717 (1958), in the court's preliminary observation to several questions which had been certified to it from the Court of Appeals. This court there noted in a remark which is correctly termed as dictum that there are many cases which hold that refusal to cross a picket line does not disqualify an employee for benefits when such refusal results from a well-founded fear of personal violence to do so, where his job continues to be open to him by his employer. See also, 28 A.L.R.2d 333. In Speagle, this court did hold that a voluntary refusal by an employee to cross a peaceful picket line set up by a union of which claimant was not a member would disqualify him under Tit. 26, § 214(A), where his job remained open to him by his employer. The dictum in Speagle reappeared in Pledger v. Department of Industrial Relations, 40 Ala. App. 127,108 So.2d 697 (1959), where Judge Cates wrote that if the trial court had determined that the claimant had a well-founded fear of personal *Page 291 
violence, then his refusal to cross a picket line would not result in his disqualification for benefits. But in that case, the picket line was peaceful.
In the instant case, the Court of Appeals held that a violence exception exists. It is urged in the brief amici curiae that such an exception does not exist in Alabama because it has only been mere rhetoric of the courts in theSpeagle and Pledger cases. It is further urged that this court reappraise our decision in Usher v. Department of Industrial Relations, 261 Ala. 509, 75 So.2d 165 (1954), which held (4-3) in effect that a claimant would not be denied unemployment benefits because of a "labor dispute" in which he was in no way involved where the employer closed the plant because of a strike by another union. Usher reaffirmed the rule as earlier announced in Department of Industrial Relations v. Drummond,30 Ala. App. 78, 1 So.2d 395 (1941), where the statute, Tit. 26, § 214(A), had not then been amended to define a "labor dispute." The majority in Usher quoted the following from Drummond:
 "* * * The conclusion is inescapable that the Legislature never intended that one, who has purchased his protection against involuntary unemployment, should be denied those benefits because of a 'labor dispute' in which he was in no way involved and the causes of which unemployment he, his agents or organization were powerless to avert. * * * "
We refused to reappraise Usher in United States Steel Corp. v. Goodwin, 267 Ala. 612, 104 So.2d 333 (1958). The Court of Appeals followed Usher at least nine times and we tacitly accepted it unanimously in Speagle, 268 Ala. 3, 105 So.2d 717.
Since the Usher decision was announced in 1954, Tit. 26, § 214 has been amended three times, in 1955, 1965 and 1969. Our interpretation remains unchanged by the legislature.
We revert to the dicta in Speagle and Pledger. In Speagle, all the Justices concurred in the following:
 "There are many cases which hold that the refusal to cross a picket line to go to work does disqualify an employee for benefits, [when such refusal does not result from a well-founded apprehension of personal violence to do so, and his job continues to be open to him,] because such is a 'participation' in a labor dispute which under the statute disqualifies one for so doing. Baldassaris v. Egan, 135 Conn. 695, 68 A.2d 120; American Brake Shoe Co. v. Annunuzio, 405 Ill. 44, 90 N.E.2d 83; Aitken v. Board of Review, 136 N.J.L. 372, 56 A.2d 587. See, also, 28 A.L.R.2d 333." (Brackets supplied.)
In Pledger, the Court of Appeals said:
 "Had the trial court determined that Mr. Pledger had a well-founded fear of personal violence, then his refusal to cross the picket line would not have entailed his disqualification. See Speagle v. United States Steel Corporation [268 Ala. 3],105 So.2d 717."
Neither statement was required to decide the question before the court in either case, but it is clear that both this court and the then Court of Appeals felt that the answer to the question should at least be qualified by the "violence exception." The cases cited by this court in Speagle support the exception and the annotation, 28 A.L.R.2d, § 20, p. 333, states, before citing cases from twelve states:
 "It is generally held that voluntary refusal to cross a peaceful picket line constitutes participation in a strike. Conversely, the same cases support the proposition that an employee is not disqualified from receiving benefits where his refusal to cross a picket line was caused by fear of violence."
We think that the "violence exception" is reasonable and that the legislature never intended that an employee be denied unemployment benefits if his unemployment was involuntary because he was prevented by personal violence or a well-grounded fear of same from entering the premises of his employing establishment. *Page 292 
Having decided that the "violence exception" is included in our law on the subject here involved, we move to a consideration of what is required to come within the exception.
Unless the exception is narrowly restricted, its recognition, without more specificity, would tend to encourage violence on the picket line because a member of a non-striking union could say that violence on the picket line caused him to refuse to cross it and begin to draw compensation. In a large multi-union plant, this procedure could go on and on and the insurance funds would be seriously depleted and the rates would rise sharply.
To qualify for unemployment compensation, the burden of proof is on the claimant to show (1) that he was willing to cross a peaceful picket line, Speagle v. United States Steel Corp.,268 Ala. 3, 105 So.2d 717; Mancini v. Administrator,24 Conn. Sup. 461, 194 A.2d 540; (2) that he made a reasonable attempt to cross the picket line in question, Achenbach v. Review Board of Ind. Employment Sec. Div., 179 N.E.2d 873, Sup.Ct. of Indiana; Baldassaris v. Egan, 135 Conn. 695, 68 A.2d 120; Franke v. Unemployment Comp. Bd. of Review, 166 Pa. Super. 251,70 A.2d 461; (3) that claimant's sole reason for failing to cross the picket line was a well-founded and reasonable apprehension of violence to his person. See Lanyon v. Administrator,139 Conn. 20, 89 A.2d 558; Sangamo Electric Co. v. Donnelly, 26 Ill.2d 348, 186 N.E.2d 230; Marczi v. Board of Review, 63 N.J. Super. 75, 163 A.2d 723. We use the word "sole" as contrasted with refusing to cross a picket line because of union beliefs, sympathy with other strikers, pangs of conscience, or adherence to union principles. This court has already said that a claimant's "refusal to cross the picket line is solely because of his adherence to a tenet of his trade unionism" disqualifies him for benefits under Tit. 26, § 214(A), Code 1940; Speagle,268 Ala. 3, 105 So.2d 717. And we have here approved the "violence exception." But a combination of the two in any percentage would impair and practically nullify both rules. This explains why the refusal to cross the picket line must be solely one or solely the other, without any combination of each.
Applying these rules to the instant case, we find under (1), supra, that there was evidence that both McCleney and Whitsett refused to cross the picket line to continue work although both crossed it to vote in their own union's election. Under practically all the authorities cited supra, this was a voluntary refusal to cross the picket line and disqualified them for benefits.
Under (2) supra, there is no evidence that either made any attempt to cross the picket line to return to work.
Under (3) supra, there is no proof that the sole reason for their failure to return to work was because of a real and genuine fear of personal violence. There was evidence (listed in the opinion of the Court of Appeals) that 117 steelworkers crossed the picket line to work during a period where it was shown that there was some violence, but neither McCleney nor Whitsett testified as to seeing any violence, and even though they went to the picket line they heard only "threats not to go into the plant" or that one Williams' car "was shot into before the strike" and Williams told Whitsett "to not cross the picket line." This does not come near meeting the burden of proof on the claimant to show that he was stopped from work by fear of violence on his person.
In Steamship Trade Ass'n of Baltimore v. Davis, 190 Md. 215,57 A.2d 818, the court said that: "The fear of violence must be real and not nebulous. Just because claimants say that they are afraid of the pickets is not enough and the mere presence of the pickets is not enough to excuse claimants from crossing picket lines." Followed in Abshier v. Review Board of Indiana,122 Ind. App. 425, 105 N.E.2d 902.
And the fact that violence erupted after these claimants had refused to cross the *Page 293 
picket line cannot bolster their claim for benefits. This was settled in Badgett v. Department of Industrial Relations,30 Ala. App. 457, 10 So.2d 872, cert. denied 243 Ala. 538,10 So.2d 880. In that case, Judge (now Justice) Simpson wrote:
 "The mere fact that, during the pendency of this controversy and while the strike was in progress, there was lawlessness, 'definance of law' — or by whatever term the acts which prevented free ingress and egress of claimant and others to and from the mill may be characterized — did not militate against the conclusion that the strike — the labor dispute — was the primary and direct cause of the claimant's inability to work at the mill. It would be specious to argue that, when a controversy resulting in a strike is attended with violence or lawlessness, it ceases to be a strike, and that the controversy or dispute eo instante, loses its identity as such. It is nonetheless a dispute, a strike, even though acts of violence, etc., attend it."
In denying certiorari, a majority of this court said: "* * * the opinion of Judge Simpson of the Court of Appeals fully treats the question of the change in the statute as applicable to this case, and his views thereon suffice for all purposes here and are expressive of our own conclusions."
This court has established the criterion of reasonableness as the test whether an employee "left his employment voluntarily without good cause," Tit. 26, § 214, subd. B. in the following language in Andala Co. v. Canus, 269 Ala. 571, 115 So.2d 123:
 "The pertinent consideration is whether or not claimant acted reasonably in quitting her job. In other words, a test of good cause is whether it is reasonable when measured by what the average or normal worker would have done under similar circumstances. Can it be said that claimant, under the facts as stated in the opinion, acted reasonably, that is, as an average or normal worker? We are of the view that she did not; that she failed to give the new work techniques a fair trial, such as we believe an average or normal worker would have done under similar circumstances."
This test was followed in Evergreen Textiles, Inc. v. State Dept. of Ind. Rel., 42 Ala. App. 364, 165 So.2d 716, cert. denied 276 Ala. 704, 165 So.2d 723.
A good statement of the application of the reasonableness test and other principles already stated is found in Schooley v. Board of Review, Etc., 43 N.J. Super. 381, 128 A.2d 708, where a decision by the Board of Review that the claimants were ineligible to compensation was affirmed. The court said, in part:
 "The claimants declined to cross the picket line, even after the injunctive order of the court had reduced the number of pickets and order had been restored at the entrance to the factory. Many are the decisions holding that voluntary refusal to cross a picket line constitutes a contributing participation in the labor dispute and a consequential disqualification for unemployment compensation benefits. (Citations omitted).
 "The basic principle is that voluntary idleness is not involuntary unemployment. It is also a widely accepted rule that failure to pass a picket line will not be regarded as a voluntary inaction where it is shown to have been due to a reasonable and justifiable fear of harm to the claimant in the existing conditions. In such a situation the failure is deemed to be involuntary. (Citations omitted).
 "In the instant controversy there was no 'lock out,' and there was a manifest failure to pass the picket boundary. To escape the statutory disqualification, the burden rested upon the claimants to establish that their failure to pursue their employment was essentially attributable to a real and genuine fear to do so rather than to a desire to abide by the traditional principles and policies of union solidarity. *Page 294 
 "The Board of Review rather sensibly resolved that the robust Local of 720 members was not intimidated by its much less sturdy neighbor of 75 members, about half of whom were women. There was an inability to supply the name of any individual who threatened a member of Local 146 with violence. Moreover, it was acknowledged that all exhibitions of violence terminated upon the issuance of the injunction on December 12, 1955, whereupon some members of the striking union resumed work, but none of the claimants and their associate members of Local 146 chose to do so until the conclusion of the strike. Actions ofttimes speak more loudly than the verbal evidence. * * * "
Here, there were only 16 men in the union that called the strike. There were about 160 men in the steelworkers union. It is unreasonable to think that 160 men would be afraid of 16 men, when during the first 10 days of the strike, there was no violence and claimants were unable to supply the names of any persons who uttered any threats or participated in any violence.
We hold that the claimants did not carry the burden of proof necessary for them to come within the "violence exception" and that the trial court erred in failing to affirm the decision of the Board of Appeals of the State Department of Industrial Relations dated July 26, 1965.
The claimants, in their brief requesting certiorari, say one of the pivotal questions on this appeal is "Whether or not legal evidence upon which the violence exception is grounded vanishes simply by virtue of the issuance of an injunction against violence." They find fault with the statement of the Court of Appeals that "However, when legal evidence upon which such exception is grounded ceases to exist, the exception likewise ceases to exist and at that time it is incumbent upon the employee to seek reinstatement to his position of employment with the company. Failure to do so within a reasonable time after the 'violence exception' ceased to exist would constitute a voluntary refusal to work notwithstanding the company's letter of February 24, 1965, threatening discharge if he did not report for work." Claimants argue that "violence does not cease to exist automatically upon the issuance of an injunction." Theoretically, it should. We know that it does not always do so. We do not hold that evidence of violence is inadmissible after the issuance of an injunction, but that the burden is still on the claimant to show that he was willing to cross the picket line, that he attempted to or that the sole reason for his failure to return to work was because of a real and genuine fear of personal violence.
Fortunately, in most cases, violence ceases when the injunction is issued, but legal evidence of the presence or absence of violence after the issuance of an injunction is admissible. The injunction should be obeyed and a new status or condition is set from and after its issuance. Evidence of violence which occurred prior to the issuance of the injunction alone is not sufficient to support a claim of fear of violence as the basis for not crossing a picket line after the issuance of the injunction.
In the absence of proof to the contrary, we must indulge in the presumption that a picket line is maintained and conducted in an orderly manner and with no intention to violate the law. Meyer v. Industrial Commission of Missouri, 240 Mo. App. 1022,223 S.W.2d 835, and cases there cited.
In the instant case, both claimants did not cross the picket line, except to vote, when it was admittedly peaceful and their jobs were open to them. They had made their decision prior to the outbreak of violence. They did not return after the violence had subsided and a majority of their own union members had returned to work. They did not meet their burden of proof to bring themselves within the "violence exception." *Page 295 
The trial court should have affirmed the decision of the Board of Appeals of the Department of Industrial Relations.
The Court of Appeals is no longer in existence, and the personnel of that court now constitutes the Court of Criminal Appeals. The Court of Civil Appeals is now the proper court to handle cases of this nature. But the members of that court did not participate in this case as it came up the appellate ladder.
Without establishing a precedent for ordinary cases, we are reversing the judgment of the Court of Appeals and are remanding this cause to the Court of Civil Appeals, with directions to that court to direct the trial court to set aside its judgments and to affirm the decisions of the Board of Appeals of the Department of Industrial Relations denying the claims of each of the claimants.
This case was originally assigned to another member of the court and was recently reassigned to the author of this opinion.
Reversed and remanded with directions.
All the Justices concur.