PER CURIAM.
This is an unemployment compensation case.
An appeals referee denied the claim of the plaintiffs for unemployment compensation. The Board of Appeals, Department of Industrial Relations, upheld the order of the appeals referee. Specifically, the Board of Appeals held that the plaintiffs were disqualified under the provision of Tit. 26, § 214 A., Code of Alabama 1940, on the ground that the unemployment of the plaintiffs was due directly to a labor dispute.
The plaintiffs, pursuant to Tit. 26, § 221, Code of Alabama 1940, appealed the decision of the Board of Appeals to the Circuit Court of Tuscaloosa County. That court, after a trial de novo, found as follows:
“Now, having considered the evidence carefully, the Court is of the opinion and finds from the evidence that the plaintiffs are entitled to receive benefits under the provisions of the Unemployment Compensation Law of Alabama for the week beginning December 14, 1975 and for each following week of unemployment and that the plaintiffs are not disqualified for such unemployment compensation benefits under Section 214-A thereof.”
The trial court went further and gave the following as the basis for its holding:
“The Court is of the opinion and finds from the evidence that the plaintiffs did not participate in the strike and did not cross the picket-line because each had a reasonable fear of violence to his person and that the apprehension of violence was reasonable and well-founded. The Court is of the further opinion and fúr-ther finds from the evidence that such a violent atmosphere prevailed at the strike site that no actual physical attempt to cross the picket line was required.”
It is from that decree that appellant-Reichhold Chemicals, Inc., appeals.
At the outset, we note the following provision of Tit. 26, § 214 A., Code of Alabama 1940, in pertinent part, is as follows:
“An individual shall be disqualified for total or partial unemployment:
“A. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; . . . ”
However, there is a “violence” exception to Tit. 26, § 214 A. This exception to the statute is a judicial interpretation which provides that if a claimant for unemployment compensation can show a well-grounded fear of personal violence, his refusal to cross a picket line would not require his disqualification for benefits. See Ex parte McCleney, 286 Ala. 288, 239 So.2d 311 (1970).
In Ex parte McCleney, supra, at p. 292, 239 So.2d at p. 315, the Supreme Court of Alabama stated that:
“To qualify for unemployment compensation, the burden of proof is on the claimant to show (1) that he was willing to cross a peaceful picket line, . . .; (2) that he made a reasonable attempt to cross the picket line in question, . .’ (3) that claimant’s sole reason for failing to cross the picket line was a well-founded and reasonable apprehension of violence to his person. . . . We use the word ‘sole’ as contrasted with refusing to cross a picket line because of union beliefs, sympathy with other strikers, pangs of conscience, or adherence to union principles. This court has already said that a claimant’s ‘refusal to cross the picket line is solely because of his adherence to a tenet of his trade unionism’ disqualifies him for benefits under Tit. 26, § 214(A), Code 1940; . . .”
With this in mind, we must now look to the evidence[1] to determine if it substantial *366 ly supports the trial court’s judgment of claimant’s qualification because of a reasonable fear of personal violence.
Appellant-Reichhold owns and operates a chemical plant near Holt, Alabama. At all times material to this action, there were two labor unions representing employees at this plant. The International Association of Machinists and Aerospace Workers, Local 1610, AFL-CIO, (hereinafter machinists) was the recognized bargaining agent for all employees in the plant’s maintenance department. The International Chemical Workers Union, Local 180, AFL-CIO, (hereinafter chemical workers) was the recognized bargaining agent for all employees in the production, shipping and laboratory departments. There were about 140 employees in the chemical workers’ bargaining unit and about 80 in that of the machinists.
The machinists called a strike at the Reichhold plant on December 8,1975, at 3 p. m. The strike lasted 100 days. A short time after the machinists struck, McDaniel and other members of the chemical workers’ executive board conferred at the picket line to decide whether the chemical workers would cross the picket line. The board members issued a “recommendation” or “temporary order” to the membership to honor the picket line, pending an “emergency” union meeting set for the evening of December 11, 1975.
On the morning of December 11, 1975, a chemical was poured, by persons unknown, on the cars of employees of Chicago Bridge and Iron Company (CBI) who were staying at a motel approximately 10 miles from the picket line. Some tires were slashed and roofing tacks were scattered about the parking lot. CBI was a plant contractor using its own employees and equipment to construct storage tanks inside the Reichhold plant area. CBI withdrew its men and equipment from the plant several days later.
At the “emergency” meeting of the chemical workers later that night, the temporary order was not rescinded nor was a vote taken by the membership to honor the strike. In fact, no vote was taken by the membership during the strike’s duration. The temporary order was also not rescinded at any time during the strike.
Although some witnesses testified to the contrary, the overwhelming tendency of the testimony reveals that the machinists’ picket line was peaceful and nonviolent. No one was physically prevented from crossing the picket line and no threats of real substance were, heard. While some “threats” were made at the picket line, most witnesses dismissed these as mere talk and the “threats” were not taken seriously.
The record further shows that the Reich-hold plant was in continuous operation throughout the strike. Approximately 40— 50 workers crossed the picket line each day without incident. At no time during the strike did a chemical workers’ member attempt to cross the picket line to go to work.
Perhaps the most serious incident at the picket line was the throwing of roofing tacks on the county road which led to the plant entrance. This occurred about 15 days after the strike started and was fairly constant throughout the strike. There was also evidence concerning nails being driven into the road, but the duration of this is uncertain.
The record does, however, reveal some incidents which took place away from the picket line. These incidents, as set out below, were never tied directly to the machinists although they were supposedly related to the strike.
*367 ALLEGED INCIDENT DATE DISTANCE FROM PICKET LINE
Concrete block thrown from car into Chem-Hauler truck radiator .12-17-75 6-7 miles
Two or three shots fired at Chem-Hauler truck from passing car During strike Approx. 10 miles
Glass broken on two rental cars of salaried Reichhold employees 2-4-76 Approx. 2 miles
Plastic explosive detonated on concrete slab of power substation. Lights went off for a few minutes 2-25-76 1,000 feet
Several Reichhold salaried employees from other plants were assaulted by unknown persons with clubs who also broke car windows. Early Mar. 5-6 miles (Local hotel)
The appellant contends the trial court erred in finding that claimants were not disqualified for benefits by § 214 A. Appellant argues that the claimants did not sustain their burden of proving that they came within the violence exception to § 214 A.
Secondly, appellant argues that there was no evidence that appellee-McDaniel or any other claimant met the eligibility requirements of Tit. 26, § 213. Appellant contends that such requirements are conditions precedent to eligibility for unemployment compensation benefits.
Turning to appellant’s first contention, we noted above the requirements a claimant must meet in order to fall within the violence exception.
The Supreme Court of Alabama, however, in Clary v. Central Foundry Co., Ala., 333 So.2d 824 (1976), stated that if there was such an overriding atmosphere of violence at the picket line, so as to constitute a well founded and reasonable apprehension of violence to his person, it would be totally superfluous and unnecessary for the claimant to prove (1) he was willing to cross a peaceful picket line and (2) that he made a reasonable attempt to cross such picket line.
Keeping in mind the standard and facts set out in Clary v. Central Foundry Co., supra, and Ventress v. Rice, 289 Ala. 631, 270 So.2d 100 (1972), the activities at the picket line in this instance do not rise to such level as to create the violent atmosphere necessary to excuse the claimant from meeting the three requirements as expressed in Ex parte McCleney, supra.
This being the case, we now must look to the three requirements as set in Ex parte McCleney, supra.
As to the first requirements, the record indicates that one claimant testified he was willing to cross the picket line. Other than this, the record is devoid of any evidence of a claimant’s willingness to cross the line. According to Speagle v. United States Steel Corp., 268 Ala. 3, 105 So.2d 717 (1958), this amounts to a voluntary refusal to cross the picket line and would disqualify them for benefits. The only way to excuse this would be the presence of such a violent atmosphere at the picket line that the proof of willingness would be superfluous and unnecessary.
As to the second requirement, a claimant is required to make a reasonable attempt to cross the picket line. However, evidence that such an attempt would pro *368 duce violence or be futile will excuse such an attempt. See Clary v. Central Foundry Co., supra; Ventress v. Rice, supra; Ex parte McCleney, supra.
The “reasonable attempt” criterion does not contemplate that a nonstriking employee risk physical harm. There are situations in which such a violent atmosphere prevails at a strike site that no actual attempt to cross the picket line would be required. See Clary v. Central Foundry Co., supra.
As noted above, no such violent atmosphere prevailed at the picket line in this case. One witness testified that he attempted to cross the line in January, 1976, but was told he would come out in a hearse. However, this witness also testified that he had been to the picket line prior to this statement and had no threats made against him. He also made several trips back to the line after the statement and encountered no threats.
It is well settled that the fear of violence must be real and not nebulous. Just because claimants say they are afraid of the pickets is not enough to excuse the claimants from crossing the line. See Ex parte McCleney, supra.
The “reasonable attempt” criterion could also be met by a claimant who never approached the picket line at all if several people attempting to cross had met with violence and a claimant knew of this violence. See Clary v. Central Foundry Co., supra. As noted above, 40-50 workers crossed the line each day without any threats or violence.
It is clear that the claimants did not make a reasonable attempt to cross the picket line. This in itself would be sufficient to deny claimant unemployment benefits due to the lack of violent atmosphere at the picket line. See Ventress v. Rice, supra.
As to the third requirement, there is no proof that the sole reason for the claimant’s failure to return to work was because of a real and genuine fear of personal violence. The McCleney case states that the fear of violence must be the claimant’s sole reason.
The testimony of several claimants indicated that they did not work because it was not the accepted thing to do and it would not be a popular thing to do. There was also a statement by a claimant that the strike was honored as a matter of policy.
There was a petition circulated and signed by approximately 50 chemical workers which expressed their desire to return to work. The record further revealed that charges could be filed against a chemical worker member if he returned to work during the strike period.
In consideration of the above, we cannot find that the sole reason of the claimants in refusing to cross the picket line was a fear of violence. An adherence to union principles, as is evident in this case, serves as a disqualification for unemployment compensation benefits according to Ex parte McCleney, supra.
In this instance, all the elements set out in Ex parte McCleney, supra, must be proven before nonstriking employees are entitled to unemployment compensation. If the claimant fails to meet one of the requirements, he is barred from receiving any benefits. In this case, as pointed out above, the claimant failed to meet any of the requirements.
While the above is dispositive of this case, we will address appellant’s second contention. Appellant argues that the judgment was erroneous because claimant did not prove compliance with § 213 eligibility requirements.
The theory in this case was whether the claimants were disqualified for benefits under § 214 A. because of unemployment due to a labor dispute in active progress. Specifically, whether the claimant’s sole reason and well founded fear of violence, i. e., violence exception to § 214 A.
Since the question of eligibility requirements was not raised or passed upon by the trial court, we do not consider it here. See Greene v. Department of Industrial Relations, 38 Ala.App. 199, 83 So.2d 360 (1955).
In summary, when an unemployment compensation case has been heard *369 orally before a trial judge, his findings are clothed with a presumption of correctness unless plainly contrary to the weight of the evidence. Department of Industrial Relations v. Jaco, Ala.Civ.App., 337 So.2d 374 (1976).
We do not find in this case such an overriding atmosphere of violence at the picket line so as to substantially support the trial court finding that claimants had a reasonable fear of personal violence. This court finds the preponderance and weight of the evidence to show the claimants disqualified from receiving unemployment compensation. This cause is therefore due to be and is reversed and remanded to the trial court to enter a judgment not inconsistent with this opinion.
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
All Judges concur.

. We note that the parties in this case entered into a stipulation concerning testimony of claimants. Appellant-Reichhold agreed with the appellee-James W. McDaniel, et al., that *366 the testimony of one claimant would be substantially the same as another claimant. This was done to prevent calling approximately 130 claimants to the witness stand.
There was also an agreement between appel-lee and the Director of Industrial Relations that the decision on the claim of James W. McDaniel, President of Local Chemical Workers, would be binding on all the other claimants who are members of the same union.