348 S.E.2d 442

John W. ASH, et al.

v.

**Phyllis J. RUTLEDGE, Clerk of the Circuit Court of Kanawha County, West Virginia; the Board of Review of the West Virginia Department of Employment Security, J.F. McClanahan, as Chairman, C.C. Elmore, Jr. and Gregory E. Elliott, as Members, Nyle Hughes as Commissioner of the West Virginia Department of Employment Security, and Edenfield Electric, Inc.**

No. 16740.

Supreme Court of Appeals of West Virginia.

March 12, 1986.

Dissenting Opinion July 10, 1986.

Stanley M. Hostler, James F. Wallington, Hostler, Wood & Segal, Charleston, for appellants.

Ricklin Brown, Bowles, McDavid, Graf & Love, Charleston, James H. Stock, Jr., Weintraub, DeHart, Robinson, Coggin & Trotter, Memphis, Tenn., for employer.

Jack O. Friedman, Legal Div., Dept. of Employment Sec., Charleston, for Dept. of Employment Sec.

McHUGH, Justice:

This action is before this Court upon the petition of John W. Ash, et al., who appeal from the final order of the Circuit Court of Kanawha County, West Virginia. Pursuant to that order, entered in March, 1985, the petitioners were denied unemployment compensation benefits. *W.Va.Code,* ch. 21A. This Court has before it the petition, all matters of record and the briefs and argument of counsel.

I

The petitioners are 57 members of Local 968 of the International Brotherhood of Electrical Workers ("I.B.E.W."), AFL–CIO. In 1982, pursuant to a collective bargaining agreement, they were employed by the respondent, Edenfield Electric, Inc., to perform electrical construction work at the Washington Works DuPont Plant in Parkersburg, West Virginia. In addition to the petitioners (electrical workers), other construction trades worked at the DuPont plant.

On June 1, 1982, members of Local 1144 of the Painters Union, AFL–CIO, established a picket line at the construction trades entrance ("construction gate") of the DuPont plant. The strike by the Painters Union followed the expiration of a collective bargaining agreement of the Painters Union for work at the plant.

At that time, the petitioners' collective bargaining agreement had not expired, and the petitioners had no labor dispute with either Edenfield or DuPont. The petitioners, however, did not cross the Painters Union picket line and did no further work at the DuPont plant until August 16, 1982, the date the picket line was terminated.

The petitioners seek unemployment compensation benefits for the period of their unemployment during the Painters Union strike.

II

In November, 1983, an evidentiary hearing was conducted by an Appeal Tribunal of the West Virginia Department of Employment Security. *W.Va.Code,* 21A–7–4(c) [1972]. During the hearing James Dotson, an I.B.E.W. official, testified that, "until four o'clock the day before the strike," Edenfield "and/or" DuPont considered opening a "reserve gate" through which the petitioners could enter the DuPont plant without walking through the Painters Union picket line. The reserve gate was never opened. Dotson indicated that, had the reserve gate been opened during the strike, the petitioners would have entered the plant and worked. Dotson testified: "Q.... You would not cross this picket line because you would honor that picket. However, if the company had ... opened the ... [reserve] gate, these men would have gone on and entered it and worked, is that your testimony? A. That's correct."

Also testifying at the hearing was Jack Hayslett, an Edenfield superintendent. Hayslett stated that although the reserve gate was never opened, the petitioners were informed in writing that work would be available to them at the plant during the strike.[1]

The Appeal Tribunal recognized that, pursuant to *W.Va.Code,* 21A–6–3(4) [1981],[2] a claimant for unemployment com-

---

1. Hayslett further testified that the DuPont plant had a "main gate," in addition to the construction gate and the reserve gate. Hayslett stated that the main gate was open during the strike and not picketed by the Painters Union. He stated, however, that DuPont maintained the main gate for DuPont employees only, rather than for workers, such as the petitioners, of the various construction trades.

2. Various statutes cited in this opinion have been amended since the period concerning the petitioner's claim for unemployment compensa-

pensation benefits is disqualified from receiving benefits, if his or her unemployment "is due to a stoppage of work which exists because of a labor dispute...." However, finding that the labor dispute concerning the Painters Union "did not involve" the petitioners, the Appeal Tribunal concluded that the petitioners were not "(one) participating, financing, or directly interested in such dispute, and (two) did not belong to a grade or class of workers who were participating, financing, or directly interested in the labor dispute...." *W.Va. Code*, 21A–6–3(4) [1981]. Thus, the Appeal Tribunal ruled that the petitioners were entitled to unemployment compensation benefits.

The ruling of the Appeal Tribunal was affirmed by the Board of Review of the West Virginia Department of Employment Security. *W.Va.Code*, 21A–7–10 [1972].

Subsequently, however, the Circuit Court of Kanawha County reversed the rulings of the Board of Review and Appeal Tribunal and held that the petitioners were not entitled to unemployment compensation benefits. *W.Va.Code*, 21A–7–17 [1967]. The circuit court determined that, inasmuch as the petitioners' unemployment resulted from their failure to cross the Painters Union picket line, the petitioners were not entitled to benefits.

### III

We noted in *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981), that "the eligibility and disqualification provisions of the West Virginia unemployment compensation law constitute a two-step process to entitlement to unemployment compensation benefits. When an individual is held to be eligible to receive unemployment benefits, the next step is to consider possible disqualification for benefits." 166 W.Va. at 680, 276 S.E.2d at 824.[3]

As stated in *W.Va.Code*, 21A–6–1(3) [1981], an unemployed individual shall be eligible to receive benefits if he or she "is able to work and is available for full-time work for which he [or she] is fitted by prior training or experience and is doing that which a reasonably prudent person in his [or her] circumstances would do in seeking work." Moreover, *W.Va.Code*, 21A–6–1(4) [1981], provides that an individual must have been "totally or partially unemployed" to be eligible to receive unemployment compensation benefits.

As to disqualification, *W.Va.Code*, 21A–6–3(1) [1981], provides that an individual shall be disqualified for benefits for leaving his or her "most recent work voluntarily without good cause involving fault on the part of the employer ...." Another provision, *W.Va.Code*, 21A–6–3(4) [1981], states that an individual shall be disqualified for benefits:

For a week in which his [or her] total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he [or she] was last employed, unless the commissioner is satisfied that he [or she] was not (one) participating, financing, or directly interested in such dispute, and (two) did not belong to a grade or class of workers who were participating, financing, or directly interested in the labor dispute which resulted in the stoppage of work. No disqualification under

tion benefits. Those amendments, however, are not relevant to this action.

**3.** It should be noted that the purpose of this State's unemployment compensation law is set forth in *W.Va.Code*, 21A–1–1 [1978]. That statute states in part: "The purpose of this chapter [21A] is to provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment."

In syllabus point 6 of *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954), this Court held that

"[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purpose intended to the full extent thereof." *See also Belt v. Cole*, 172 W.Va. 383, 305 S.E.2d 340, 342 (1983); syl. pt. 1, *Gibson v. Rutledge*, 171 W.Va. 164, 298 S.E.2d 137 (1982); syl. pt. 1, *Lee-Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982); *Kirk v. Cole*, 169 W.Va. 520, 288 S.E.2d 547, 549 (1982); *Hill v. Board of Review*, 166 W.Va. 648, 276 S.E.2d 805, 812 (1981); *London v. Board of Review*, 161 W.Va. 575, 576–77, 244 S.E.2d 331, 333 (1978); *Bennett v. Hix*, 139 W.Va. 75, 83, 79 S.E.2d 114, 118 (1953).

this subdivision shall be imposed if the employees are required to accept wages, hours or conditions of employment substantially less favorable than those prevailing for similar work in the locality, or if employees are denied the right of collective bargaining under generally prevailing conditions, or if an employer shuts down his plant or operation or dismisses his employees in order to force wage reduction, changes in hours or working conditions.

. . . .

The resolution of the eligibility issue in this action is aided by reference to this Court's decision in *Belt v. Cole,* 172 W.Va. 383, 305 S.E.2d 340 (1983). In *Belt,* the Circuit Court of Kanawha County held that, in view of *Pickens v. Kinder,* 155 W.Va. 121, 181 S.E.2d 469 (1971), striking employees do not meet the eligibility requirements of this State's unemployment compensation law. We held, however, that such a holding renders "meaningless or useless" the statutory labor dispute disqualification of *W.Va.Code,* 21A-6-3(4).

■ Concluding that the employees, in *Belt,* were eligible to receive unemployment compensation benefits, this Court remanded the action to the circuit court to determine whether the employees were "disqualified by W.Va.Code, 21A-6-3(4), *or [fell] within the specifically enumerated exceptions to disqualification in that section.*" 172 W.Va. at 386, 305 S.E.2d at 343. (emphasis added). The syllabus point of *Belt* states:

4. Syllabus points 3, 4 and 5 of *Pickens v. Kinder, supra,* overruled in *Belt v. Cole, supra,* state:

> 3. Employees who go on strike do not sever their employer-employee relationship, and such relationship continues during the entire time they are on strike and until such time as they quit or obtain employment elsewhere, and striking employees who intend to return to their jobs are not totally unemployed where there is no showing of a separation from employment.
>
> 4. Where employees voluntarily go on strike but work is available at the employer's plant, such employees are not partially unemployed because a strike does not create a *lack of work* where work is available to the strikers during the strike.

Unemployment compensation claimants meet statutory eligibility requirements of 'total or partial unemployment' and 'availability for work' even if they are not working because of a labor dispute. W.Va.Code, 21A-6-3(4) must be applied to their cases to determine whether they are disqualified or fall within an exception to disqualification. Syllabus Points 3, 4, and 5 of *Pickens v. Kinder,* 155 W.Va. 121, 181 S.E.2d 469 (1971), are overruled.[4]

Furthermore, in *Hill v. Board of Review,* 166 W.Va. 648, 276 S.E.2d 805 (1981), where a mine was closed for repair during a period in which "roving pickets" were occasionally present, this Court, in syllabus point 2, stated:

> The existence of a possibility or probability that employees would not have reported to work had work been available and had pickets been present at the employer's premises is insufficient to support a finding that such employees were unavailable for work and therefore ineligible for unemployment compensation benefits, where the employees affirmatively show their willingness to accept available employment despite the existence of a labor dispute affecting other [employers].

Upon the record before us, we conclude that the petitioners in this action are eligible to receive benefits. The question remains, however, as to whether the petitioners are disqualified to receive benefits.

This Court, in *Copen v. Hix,* 130 W.Va. 343, 43 S.E.2d 382 (1947), held in syllabus point 1 that:

> 5. *Code,* 21A-6-6, as amended, pertaining to suitable work, which reads as follows: 'Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied to an individual, otherwise eligible, for refusing to accept *new work* under any of the following conditions: (1) If the position offered is vacant due directly to a strike, lockout, or other labor dispute.', is not applicable to employees on strike at an employer's plant where the employer-employee relationship still exists since the work is not *new work* as to them. The section is applicable only to strangers to the labor dispute involved or to former employees who had terminated their employment prior to the dispute.

[w]here a stoppage of work due to a labor dispute is the basis of a claim for unemployment compensation ..., the burden rests upon the applicant to show to the satisfaction of the Director of Unemployment Compensation that he was not participating, financing, or directly interested in such labor dispute and that he did not belong to a grade or class of workers who were.

Referring to the phrase "directly interested" in the disqualifying statute, however, Judge Riley (joined by Judge Lovins), dissenting in *Copen v. Hix*, observed: "The qualifying word 'directly' precludes any idea that an interest which would preclude claimants under the statute is merely sympathy or an abstract attitude of the mind. If that had been the intendment of the Legislature, the qualifying word would not have been used." 130 W.Va. at 359, 43 S.E.2d at 390. *Cf. Hill v. Board of Review, supra,* 166 W.Va. at 655, 276 S.E.2d at 809, n. 5; *annot.,* 62 A.L.R.3d 380 (1975).

In any event, the facts in this action do not support a conclusion that the petitioners' unemployment simply resulted from a sympathetic stance concerning the Painters Union picket line. Although the petitioners' local union organization and the Painters Union were both affiliated with the AFL–CIO, the Painters Union constituted an "autonomous" entity, vis-a-vis the petitioners. *See* dissenting opinion, *Copen v. Hix, supra.* The work performed by the petitioners and the members of the Painters Union was dissimilar.

Moreover, the petitioners were powerless to avert the event from which the strike precipitated, i.e., the expiration of the collective bargaining agreement of the Painters Union for work at the DuPont plant. Nor does the record suggest that the petitioners picketed the plant.

The Painters Union strike notwithstanding, there is no showing in the record that the petitioners had a labor dispute during the period in question with either DuPont or Edenfield. Rather, the evidence of the petitioners, submitted before the Appeal Tribunal, indicated that the petitioners had an affirmative willingness to work, had the reserve gate to the DuPont plant been opened during the strike.

It should be noted that although the construction gate at the plant was picketed by the Painters Union, a third gate, the "main gate," was open during the strike and not picketed. The record suggests, however, that DuPont maintained the main gate for DuPont employees only, rather than for workers, such as the petitioners, of the various construction trades. *See* n. 1, *supra*. Neither DuPont nor Edenfield attempted to make the main gate available to the petitioners during the strike.[5]

In syllabus point 1 of *Kisamore v. Rutledge, supra,* we held: "Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review."

In this action, the Appeal Tribunal and the Board of Review found that the labor dispute concerning the Painters Union "did not involve" the petitioners. Under the circumstances of this action, we believe that the Appeal Tribunal and the Board of Review properly ruled that the petitioners were entitled to receive benefits.

Upon all of the above, the final order of the Circuit Court of Kanawha County is hereby reversed, and the petitioners are held to be eligible and not disqualified to receive unemployment compensation benefits. Accordingly, this action is remanded to the circuit court for proceedings consistent with the principles of this opinion.

Reversed and remanded.

---

5. The testimony of Jack Hayslett, an Edenfield superintendent, was somewhat contradictory upon that point. He indicated that had the petitioners attempted to use the main gate during the Painters Union strike there would have been "no problem." He also indicated, however, that the petitioners would have been stopped by DuPont security guards, had the petitioners attempted to use that gate.

BROTHERTON, Justice, dissenting:

I must respectfully note my dissent in this case for three reasons.

First, the employees voluntarily did not report to work and there was no good cause involving fault on the part of the employer. Therefore, W.Va.Code § 21A–6–3(1) (1985) would disqualify them from receiving any benefits.

Second, although these employees did not start the strike, when they refused to come to work they were in effect joining the strike and participating in a labor dispute. *See, e.g., Ex parte McCleney*, 286 Ala. 288, 239 So.2d 311 (1970). Therefore, W.Va.Code § 21A–6–3(4) (1985) would disqualify these workers from benefits.

Third, the workers were not forced to cross the picket line. The "main gate" was open at all times during the strike. They could have walked through that gate to get to their work. Had a fallen tree blocked one gate, we would not have excused the workers for not reporting to work through another gate. A picket line blocking a normal gate should also be no excuse where another gate is open.

For these reasons, I respectfully note my dissent.

I am authorized to state that Justice NEELY joins me in this dissent.